IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) | |
| ) | |
| THE PERSON OF SOLOMON GIVENS, DOB 5/04/1969, ) | Magistrate No. 21-2258 |
| FOR THE COLLECTION OF BUCCAL DNA SAMPLE ) | **[UNDER SEAL]** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Task Force Officer William Churilla, having been duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant, Task Force Office William Churilla, being duly sworn according to law, aver that the following is true and correct to the best of my knowledge, information and belief and is based on personal knowledge or information provided by reliable sources.

2. Your Affiant is a member of both the Pittsburgh Bureau of Police (PBP) and is also a Task Force Officer with the Drug Enforcement Administration (DEA). As a Pittsburgh police officer, I am empowered under state law to make arrests for violations of state criminal laws, and I am also empowered to execute state search warrants. As a DEA Task Force Officer, I am empowered under federal law to make arrests for violations of federal criminal laws, and I am also empowered to execute federal search warrants.

3. I have a High School Diploma, as well as a bachelor's degree in criminology and Business Management from Duquesne University. After my 1988 graduation from Duquesne University, I worked for approximately 5 years with juveniles adjudicated of crimes at the Allegheny Academy Juvenile Facility. In 1997, I began to work full-time as a police officer for the City of Pittsburgh. I spent the first several years as a patrol officer in the Zone 2 section of

1

Pittsburgh which encompasses neighborhoods including the Hill District. I remain employed with the PBP and became a Detective in approximately 2007.

4. In 2013, I was assigned to Narcotics and Vice where I primarily investigated drug and firearm offenses. I have purchased drugs including marijuana, cocaine, heroin and fentanyl in an undercover capacity on many occasions and have been involved as a back-up officer in many undercover purchases by other officers. I have been involved in numerous controlled purchases, of various types of drugs, by cooperating individuals. I have obtained numerous search warrants regarding drug and firearm violations and have been involved in numerous similar search warrants obtained by my fellow police officers.

5. I have been asked to render an expert opinion on many occasions regarding whether various circumstances show that drugs were possessed for distribution, as opposed to personal use. I have been qualified and testified as a narcotics expert in court more than a dozen times. My relevant trainings include the initial Pittsburgh Police Academy training, as well as the "Top

6. Gun" Narcotics Investigation course, Pennsylvania Electronic Surveillance "A" certification training, ATF "Characteristics of Armed Individuals" training, and interrogation and interview training. My drug and firearm experience come from working not only with many other members of the PBP, but with numerous other local, state and federal investigators including the ATF, FBI and DEA. I have been involved in over 1000 arrests in my career, many involving guns, drugs or both.

7. I have experience and am responsible for investigating violations of federal laws, specifically Title 21 of the United States Code offenses. Based on my training and experience, I know that it is a violation of Title 21 of the United States Code, Sections 841 (a)1 and 841 (b)(1)(c) to manufacture, distribute or dispense, or possess with intent to distribute a controlled substance.

I also have become familiar with federal firearms laws under Title 18. Specifically, as it pertains to this application for a search warrant, I know that under Title 18, United States Code, Section 922(g)(1), it is unlawful for a person convicted of a crime punishable by more than one year in prison to possess a firearm.

8. Through a combination of training and experience, I have become aware that DNA is a component of human blood, fluid, and tissue. I am also aware that each person has a DNA "profile" based on his/her genetic makeup, and that each person's genetic profile is statistically unique to him/her. I have learned through my training and experience that suspects may leave DNA evidence behind in the form of blood, sweat, hair, and skin cells. I also know through my training and experience that DNA evidence can be left behind on firearms because firearms often have ridges or rough textured surfaces that facilitate the transfer of skin and/or sweat.

9. I am aware that oral DNA swabs, known as buccal swabs, are commonly used to obtain saliva samples from individuals so as to identify the individual's DNA profile. I am also aware that obtaining such samples requires no medical training or experience and these swabs are frequently obtained by law enforcement officers and provided to criminal laboratories for testing. I am also aware that federal and state courts routinely allow DNA evidence to be admitted as a means to link evidence to a specific individual.

10. Your Affiant makes this Affidavit in support of search warrants for the collection of deoxyribonucleic acid ("DNA") evidence through the use of a buccal swab from SOLOMON GIVENS ("GIVENS"), an African-American male, with a date of birth of May 4, 1969, currently incarcerated at the Allegheny County Jail.

11. This DNA swab would be used to compare any DNA collected from items of evidence recovered during the execution of a search warrant at 428 Vale Dr. Unit B, Pittsburgh,

PA 15239, in Plum, PA. on October 12, 2021.  Because I am drafting this Affidavit only for the specific limited purpose of providing probable cause for the seizure of a DNA samples from GIVENS, I am not providing all facts known to me at this time.

12. Based upon the information contained herein, your Affiant has probable cause to believe that on or about October 12, 2021, GIVENS, who is a felon, possessed a firearm in violation of Title 18, United States Code, Section 922(g)(1) and possessed fluorofentanyl, fentanyl, methamphetamine, cocaine, and cocaine base with intent to distribute in violation of Title 21, United States Code, Section 841(a).  There is also probable cause to conclude that the interior of the mouth of GIVENS will contain his DNA and that swabbing the interior of GIVENS' mouth will result in the collection of a sample of his DNA. This DNA samples will be used for comparison and elimination testing relative the evidence recovered from 428 Vale Dr. Unit B, Pittsburgh, PA 15239, as described below.

13. The collection of this type of evidence by search warrant and its admission as probative evidence at trial has been sanctioned by federal courts.  See, e.g., United States v. Bullock, 71 F.3d 171, 175-77 (5th Cir. 1995), cert. denied, 517 U.S. 1126 (1996) (execution of search warrant for blood and hair samples of suspect was reasonable under Fourth Amendment); United States v. Chischilly, 30 F.3d 1144 (9th Cir. 1994), cert. denied, 513 U.S. 1132 (1995) (DNA evidence of match between defendant's blood sample and semen found on victim's clothing, and testimony regarding probability of coincidental match were admissible).  Your affiant therefore requests authorization from this Court to permit the collection of saliva samples from the person of GIVENS and to thereafter have this saliva sample analyzed and this DNA compared to any DNA recovered from the aforementioned firearm.

14. I have obtained the information contained in this Affidavit from officers with the Allegheny County District Attorney's Office DANET unit, my own investigation, and from other agents of the DEA.

15. The information in this affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE IN SUPPORT OF SEARCH WARRANT**

16. In early 2021, a criminal investigation was initiated into Solomon GIVENS selling heroin/fentanyl and cocaine in the City of Pittsburgh and surrounding areas.

17. A review of GIVENS criminal history revealed that he has narcotics related felony convictions from both federal and state court. In September 2000, GIVENS was convicted in federal court of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine and possession of a firearm by a convicted felon and was sentenced to 128 months incarceration. Additionally, in October 2014, GIVENS was convicted at two separate case for possession with intent to distribute a controlled substance and was sentenced to 10 years of probation in Allegheny County, PA. Also, in July 2017, GIVENS was convicted of possession with intent to distribute a controlled substance and was sentenced to 30 to 60 months incarceration in Allegheny County, PA. Additionally, GIVENS is currently on Pennsylvania State Parole until April 2023 for his most recent felony drug convictions. GIVENS was paroled to his girlfriend Stacey Millers residence located at 245 Anthony St., Pittsburgh, PA 15210.

18. Through this investigating, detectives have learned that Solomon Givens was residing at the following addresses: 2033 McKinney Dr, Monroeville, PA 15239; 2215 Ardmore

Blvd, Forest Hills, PA 15221; and 428 Vale Ave. Unit B. Pittsburgh, PA 15239.  The investigation also revealed that GIVENS was utilizing several vehicles to include a black four door Subaru with PA vehicle registration: LPE-0355.  This vehicle is registered to Elizabeth Alana Litz of 65 Bigelow St., Pittsburgh, PA 15207.  The investigation further revealed that Elizabeth Litz has a child in common with GIVENS.

19.     In this investigation, a confidential source ("CS") was developed and agreed to assist law enforcement in the purchasing of illegal narcotics from GIVENS.  Upon debriefing of the CS, he/she stated that GIVENS was utilizing cell phone number 412-701-8450 to negotiate price, location and time to sell illegal narcotics. The CS stated to detectives that once the CS and GIVENS agreed upon a quantity and price, the CS and GIVENS would meet to complete the drug transaction.  Over the next several weeks detectives utilized this CS to purchased illegal narcotics from GIVENS.  Additionally, detectives utilized surveillance of GIVENS.  During this surveillance, detectives followed GIVENS to multiple locations and observed what they believe, based upon their training and experience, to be hand-to-hand drug transactions.

20.     In September of 2021, detectives applied for and were granted permission by the Honorable Judge David Cashman to install a GPS tracking device on the black four door Subaru with PA vehicle registration: LPE-0355, utilized by GIVENS.  THE GPS tracking device revealed to detectives that GIVENS was utilizing the residence located at 428 Vale Dr. Unit B, Pittsburgh, PA 15239.  The GPS tracker revealed that the black Subaru operated by GIVENS would leave from and return to this location more than any other location, and the majority of the vehicle was at this location.

21. On October 12, 2021, DEA HIDTA Group 61, along with the Allegheny County District Attorney Narcotics Enforcement Team (DANET), formulated a plan to make a controlled purchase of heroin from GIVENS through the use of a confidential informant.

22. Detectives had the CS contact GIVENS on his cell phone number to purchase a quantity of illegal narcotics from him at a predetermined location. The CS made positive contact with GIVENS. GIVENS agreed to sell a quantity of illegal narcotics to the CS at the predetermined location. The CS and his/her vehicle was searched prior to the controlled by for any contraband with negative results. The CS was then given serialized United States currency to purchase the illegal narcotics from GIVENS. Detectives then followed the CI to the predetermined location.

23. Detectives who had setup surveillance at 428 Vale Dr. Unit B watched GIVENS come out of Unit B, go to his black Subaru with PA vehicle registration: LPE-0355 and retrieve his coffee cup and go back into 428 Vale Dr. Unit B. At 11:44 am, GIVENS was observed exiting 428 Vale Dr. Unit B, gets into the driver seat of his black Subaru with PA vehicle registration: LPE-0355, starts the vehicle, and drive in the direction of the predetermined location. Surveillance units followed GIVENS to the predetermined location where the CI was waiting. Your affiant and DEA TFO Nathan Lareo observed GIVENS pull into the predetermined location at 11:48am and meets with the CI.

24. At 11:49 am, surveillance units observe the CI drive away from the predetermined location. The CI was followed by detectives to a prearranged location. The CI then turned over a quantity of illegal narcotics that he/she had just purchased from GIVENS. The CI and his/her vehicle was searched again with negative results. The CI was debriefed and released.

25. At 11:53 am GIVENS backed out of his parking spot and left the predetermined location. Your affiant and TFO Lareo passed this information on to a surveillance team and began following GIVENS. A short distance away uniformed officers pulled GIVENS over in the black Subaru with PA vehicle registration: LPE-0355. GIVENS was taken into custody without incident.

26. On October 12, 2021, Detective Justin Keenan of DANET applied for and received a PA State Search Warrant for 428 Vale Drive, Plum Borough, Pa. Unit B.

27. At 1:25 p.m. Investigators from DANET along with DEA Group 61 executed the search warrant. Detectives knocked and announced their presence with no response. Using the red key from the key ring obtained when GIVENS was taken into custody, detectives gained access to the apartment's two secured doors.

28. During a search of the residence detectives recovered eight firearms, ammunition, a large quantity of controlled substances to include: over 700 grams of methamphetamine; 399 grams of p-fluorofentanyl; and 746 grams of cocaine, multiple boxes of unused stamp bags used to package heroin/fentanyl, multiple digital scales with white residue on them, cutting agents used to increase the volume of packaged controlled substances, $14,000 in US currency, face masks, and indicia for GIVENS.

29. Through your Affiant's training and experience, and through consultation with other law enforcement officers, I believe that GIVENS possessed the above-mentioned controlled substances with the intent to distribute rather than for personal use based on the quantity, presence of packaging materials, presence of multiple firearms, presence of digital scales with white residue, and large amount of United States currency.

**CONCLUSION**

16. Based on the foregoing, your Affiant has probable cause to believe that on or about October 12, 2021, Solomon GIVENS unlawfully possessed a firearm and unlawfully possessed controlled substances with an intent to distribute in violation of Title 18, United States Code, Section 922(g)(1) and Title 21, United States Code, Section 841(a) and that any DNA recovered from the evidence collected from 428 Vale Dr., Unit B, may be that of Solomon GIVENS. Your Affiant, therefore, seeks warrants to collect a sample of GIVENS' DNA so that the samples can be compared to any DNA recovered from the aforementioned evidence.

The above information is true and correct to the best of my knowledge, information, and belief.

/s/ *William Churilla*
William Churilla,
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn before me, by telephone,
Pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
This 24th day of November 2021.

_____
THE HONORABLE PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE